UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DEANNA RAYNELLE DUNCAN,        :

                 Plaintiff,       :         **REPORT AND RECOMMENDATION**

       -against-         :

CAROLYN W. COLVIN, ACTING     :           13-CV-4717 (AT) (KNF)
COMMISSIONER OF SOCIAL SECURITY,
                       :

             Defendant.
--------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE ANALISA TORRES, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Deanna Raynelle Duncan ("Duncan") commenced this action against the Commissioner of Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ") decision, dated October 28, 2011, finding her ineligible for disability insurance benefits ("DIB"), pursuant to Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-434,  and Supplemental Security Income ("SSI") benefits, pursuant to Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381-1385.   Before the Court are the parties' respective motions for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The plaintiff seeks an order: (1) "reversing the administrative decision"; or (2) "in the alternative, remanding the matter for a new hearing."  The defendant seeks an order "dismissing the Complaint."

# BACKGROUND

## *Administrative Procedural History*

Duncan filed her applications for benefits on February 4, 2010.  On August 2, 2011, the ALJ conducted a video hearing, at which Duncan appeared with her attorney and testified.  On October 28, 2011, the ALJ denied Duncan's applications.  On May 7, 2013, the Appeals Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner.  This action followed.

## *ALJ's Decision*

The issue before the ALJ was whether Duncan was disabled.  The ALJ found that Duncan: (1) meets SSA's insured status requirements, through March 31, 2009; (2) has not engaged in substantial gainful activity, since February 19, 2007; (3) has severe impairments of bilateral carpal tunnel syndrome, lumbar disc bulge, fibromyalgia, bipolar disorder, panic disorder, polysubstance abuse, plantar fasciitis right foot, peripheral neuropathy, degenerative disc disease of the cervical spine, asthma, right knee osteoarthritis and obesity; (4) does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) has the residual functional capacity to perform sedentary work, wherein she can stand and or walk for up to two hours a day, she can sit up to six hours a day, and she can occasionally lift and carry ten pounds frequently and occasionally, she can understand and carry out simple unskilled work tasks, but due to pulmonary difficulties, she must avoid dust, gas, fumes and other respiratory irritants, she can engage in frequent fingering and handling and occasional crouching, crawling and stooping; (6) is unable to perform any past relevant work; and (7) was born in 1968,  has at least a high school education and is able to communicate in English.  Furthermore, the ALJ determined that

transferability of job skills is not material to the determination of disability because, using the

medical vocational rules as a framework supports a finding that Duncan is not disabled

regardless of her transferable job skills.  The ALJ concluded that, considering Duncan's age,

education, work experience and residual functional capacity, jobs exist in significant numbers in

the national economy that Duncan can perform.  As a result, the ALJ found that Duncan was not

disabled from February 19, 2007, through the date of the ALJ's decision.

      In considering whether Duncan has an impairment or combination of impairments that

meets or medially equals the severity of one of the impairments listed in the SSA regulations, the

ALJ noted the absence of evidence of muscle atrophy, or motor or sensory deficits in any of

Duncan's extremities and, despite complaints of knee pain, Duncan maintained almost full range

of lower extremity motion, with no indication of significant motor weakness, instability,

swelling, effusion or deformity.  The ALJ also noted the absence of an effective disorder or other

psychiatric illness resulting in marked restriction in two of the four categories applicable to

mental impairments under the SSA regulations.  Furthermore, he found the record devoid of

other findings necessary to establish any other medically determinable impairment which meets

or equals the requirements of the SSA regulations.  The ALJ observed that Duncan's disorders

imposed mild restrictions upon the areas of activities of daily living and in social functioning and

moderate limitations in the ability to maintain sustained concentration and attention.  Duncan's

concentration and memory limitations have been noted for complex tasks, but not simple tasks.

Moreover, the ALJ considered the possibility of deterioration or decompensation in work or

work-like settings, but found no restrictions.

      In connection with Duncan's residual functional capacity, the ALJ described the

governing legal standard and Duncan's testimony concerning her inability to work, due to

depression and anxiety as well as her complaints of knee, foot and back pain.  The ALJ found

that the evidence did not corroborate the degree of restriction and pain Duncan alleged she

suffered in her back and legs.  The ALJ noted that the examination revealed tenderness and some

pain with the movement of Duncan's right knee and feet, but no resulting deficits or clinical

findings existed limiting Duncan's ability to perform functions, such as sitting or lifting and

carrying lighter objects.  The ALJ explained that "[r]egular examinations by physician assistant,

Dennis Waxman ["Waxman"] noted relatively mild findings for the claimant's lower back,

upper extremities and neck," as well as Duncan's right knee and right foot, in addition to right

elbow epicondylitis, resulting in muscle tenderness.  However, no persistent neurological deficits

to the upper or lower extremities, persistent muscle spasm, muscle atrophy or significant

restriction in motion was found.  The ALJ stated that his findings are consistent with treatment

notes from "Dr. Kaplan," who observed that the findings noted on magnetic resonance imaging

scans were not consistent with the high degree of feet pain Duncan reported.

The ALJ also considered an evaluation by Dr. Elena Kaznatcheeva ("Dr.

Kaznatcheeva"), who found no basis for the highly limiting pain Duncan reported.  Dr.

Kaznatcheeva reported that Duncan's medical history revealed chronic pain syndrome with mild

objective findings and noted Duncan's non-compliance with the prescribed medication and

overuse of controlled substances.  The ALJ noted that Duncan reported numbness in her hands

and legs, but, despite pain in the muscles and joints with some limitation of motion revealed on

physical examination, no neurological abnormalities were demonstrated.  Moreover,

notwithstanding Duncan's allegations of mental difficulties impeding her memory and daily

functioning, she was able to repeat names, comprehend and follow-up three-step commands, was

alert, well-oriented and displayed appropriate affect, suggesting no deficits in memory.

Additionally, the ALJ observed a history of asthma for which an inhaler had been prescribed, but no persistent myalgia and arthralgia with multiple positive trigger points, or other signs and symptoms associated with fibromyalgia were present. The ALJ noted no documentation of constant forgetfulness, migraine headaches and persistent fatigue existed in the record. The ALJ concluded that a review of the progress notes failed to reveal findings which are consistent with the extent of pain and limitation reported by Duncan.

The ALJ considered the examination of Duncan performed by Dr. Leena Philip ("Dr. Philip") and noted, in great detail, Dr. Philip's findings, including those concerning: (1) the full and painless motion of Duncan's neck; (2) her full lumbar motion, with no discomfort either at rest or when moving about the room; and (3) her slight limp to the left. The ALJ noted Dr. Philip's finding that Duncan was 5'4" tall and weighed 244 lbs, and he considered Duncan's obesity, as required by the SSA regulations, finding that Duncan should be limited to occasional crouching due to her obesity. The ALJ gave Dr. Philip's findings great weight because they were consistent with substantial evidence, and Dr. Philip's opinion was well-based on detailed objective findings.

Concerning Duncan's psychiatric disorders, the ALJ noted that the evidence is consistent with some feelings of sadness and anxiety, but it was not clear whether Duncan suffered any significant limitation in mental functioning which would preclude all vocational functioning. The ALJ noted that Dr. Leslie Helprin ("Dr. Helprin") failed to find any debilitating limitation in Duncan's daily functioning. Dr. Helprin observed that Duncan engaged in daily activities, including dressing, bathing, grooming, cooking, cleaning and food shopping with the help of her husband. Dr. Helprin opined that Duncan was able to follow and understand simple and some complex tasks and maintain, sufficiently, attention, concentration and a regular schedule, and

5

that nothing existed that would preclude Duncan from working. The ALJ gave Dr. Helprin's opinion some weight, given it was based on Dr. Helprin's own examination of Duncan and was consistent with a preponderance of the overall medical evidence.

The ALJ found that, after careful consideration of the evidence, Duncan's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Duncan's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they are inconsistent with the residual functional capacity assessment. According to the ALJ, no evidence substantiates the severe degree of numbness, stiffness, pain and weakness consistent with the highly limited functional abilities that Duncan reported. Moreover, no evidence supports the persistent pain, neurological deficit or significantly limited motion associated with Duncan's neck or extremities, and ample records from treating and examining sources yield no indication that Duncan is otherwise restricted in her ability to sit or precluded from all walking or standing.

The ALJ determined that Duncan's testimony was credible with regard to experiencing some neck and upper extremity pain, but was not consistent with allegations of total disability. Moreover, the ALJ noted restrictions placed by plantar fasciitis and osteoarthritis, but found they did not impede all functioning. Furthermore, the ALJ determined that the evidence failed to demonstrate deficits consistent with a disorder impacting Duncan's joints which would cause more than a mild to moderate restriction on her ability to engage in physical functions. The ALJ recognized that Duncan's multiple conditions would reasonably result in some restriction, especially for prolonged standing and walking. However, he found that no indication exists that Duncan's conditions reduced to any significant extent her capacity for all physical functions or her ability to engage in various activities.

The ALJ observed that the record shows symptoms of depression, but fails to establish that any emotional disturbance experienced by Duncan resulted in a sustained significant impact upon her functioning.  The ALJ gave great weight to the opinion of the examining psychologist, finding it persuasive.

The ALJ explained why Duncan's allegations of debilitating symptoms were not credible.  He observed that, at the hearing, Duncan testified she suffered from poor focus and attention, due to medication, but displayed no such difficulties during the hearing.  Duncan denied any history of self-employment, but when confronted with the records showing that, as of April 5, 2010, she had been running an online bookstore eight hours a day, Duncan admitted that she had worked, two to three hours a day for five months, running an online bookstore.  The ALJ found that, overall, Duncan's testimony regarding her employment history was vague and evasive, and she demonstrated she was able to work during the time she alleged disability, which established that she retained the physical endurance to sustain a large range of functional ability that involved the use of her hand and upper extremities.  Morever, Duncan's credibility was undermined by her testimony that she never abused street drugs while receiving pain medication, because the treatment records demonstrate that she had been abusing multiple controlled substances while receiving medication.  The ALJ noted that Duncan revealed, during a psychological consultative examination, that she had been arrested for falsifying business records, gun possession and drug possession, casting further doubt upon her credibility.  The ALJ concluded that the clinical and laboratory evidence does not support Duncan's allegations of disabling symptoms to the extent that they would prevent her from performing a range of sedentary work.  The ALJ noted that his finding is corroborated by an assessment performed by a State Agency psychologist, "Dr. Kamin," who, upon reviewing the record, opined that Duncan

sustained the capacity to perform simple, unskilled work. The ALJ gave some weight to that opinion because it was consistent with progress notes and objective findings from a mental status evaluation and well-supported by a preponderance of medical evidence.

In determining whether a successful adjustment to other work can be made, the ALJ considered Duncan's age, education and work experience. Finding that the additional limitations had little or no effect on the occupational base of unskilled light work, the ALJ concluded that Duncan was not disabled.

***Plaintiff's Contentions***

Duncan contends that the ALJ erred in assessing her credibility and failed to evaluate her subjective complaints of pain. She asserts that, after discussing her medical history, the ALJ stated that Duncan's statements concerning her symptoms were not credible to the extent they are inconsistent with the residual functional capacity assessment. According to Duncan, this approach, suggesting that the ALJ made the residual functional capacity determination and then used that determination to discount Duncan's nonconforming allegations, has been found troubling by courts in this circuit. Duncan contends that "the ALJ should first determine the extent to which the claimant's symptoms are credible in light of the objective record evidence, and then use that finding as one aspect of the [residual functional capacity] analysis. Determining the [residual functional capacity] first and then measuring the claimant's credibility by that yardstick reverses the standard in a way that is not only illogical, but also prejudicial to the claimant."

Duncan asserts that the ALJ's residual functional capacity assessment is not supported by substantial evidence and it "is insufficiently presented in his decision to permit the Court to carry out its review function." Moreover, it fails to provide a function-by-function assessment of

8

Duncan's ability to sustain work-related physical and mental activities in a work setting on a regular and continuing basis because it does not address her "ability to carry push or pull." Duncan contends that the ALJ failed to make citation to any evidence in support of his finding that she can stand and walk for up to two hours a day, sit up to six hours a day and occasionally and frequently lift and carry ten pounds. Furthermore, no evidence exists supporting the ALJ's finding that Duncan can engage in frequent fingering and handling; rather, objective medical testing shows that she suffers from bilateral carpal tunnel syndrome.

Duncan contends that the ALJ failed to meet his burden at step five of the sequential analysis because he relied on the medical vocational guidelines even though her exertional impairments are compounded by significant non-exertional impairments limiting her ability to perform light work. According to Duncan, the ALJ committed an error when he failed to engage a vocational expert because the "record is replete with evidence of significant nonexertional limitations." The ALJ committed an error when he failed to provide any analysis of Duncan's non-exertional limitations and simply dismissed them as having little or no effect on the occupational base of unskilled sedentary work.

Duncan asserts that the ALJ failed to follow the treating physician rule, because he did not give controlling weight to her treating physicians. Duncan maintains that the weight the ALJ accorded to medical opinions is confusing because the ALJ gave "great weight" to the opinion of the one-time consulting examiner, Dr. Philip, and to "the examining psychologist," referring to Exhibit 6. However, Duncan asserts, Exhibit 6 is the record of "Dr. Scheinfeld," involving the objective testing determining carpal tunnel syndrome. Duncan contends that the only consultative examining psychologist is Dr. Helprin, who was accorded some weight by the ALJ. Duncan maintains that no weight was accorded to her treating physicians; rather, the ALJ

substituted his own opinion for competent medical opinion.

According to Duncan, the ALJ made contradictory statements when he stated that "[t]here are no indications of persistent pain, neurological deficit or significant limited motion associated with the claimant's neck or extremities," but also that "[w]hile reports may suggest some neurological disturbance, they do not substantiate the high degree of limited functioning alleged by the claimant." She asserts that "attaching significance to the absence of or omission of findings such as the ALJ did herein is error."

***Defendant's Contentions***

The defendant contends that substantial evidence supports the ALJ's decision that Duncan is not disabled. She maintains that the assessment of Duncan's credibility was proper, as the ALJ explained. According to the defendant, "the ALJ's formulation does not evidence a predetermined credibility analysis nor does it reflect a *per se* error," and the courts in this circuit "have noted [a residual functional capacity] and credibility formulation similar to the one used in this case, and have upheld the ALJ's finding regarding subjective claims." The defendant contends that the ALJ relied on Dr. Kaznatcheeva's observation that no basis existed for the highly limiting pain Duncan alleged, and he observed the inconsistency between Duncan's testimony and the evidence about her employment and the use of street drugs. The ALJ rejected Duncan's claims of memory loss and impaired attention because they were not borne out by the record and noted, appropriately, that she had been convicted of falsifying business records, which was related directly to her veracity.

The defendant contends that the ALJ determined properly Duncan's residual functional capacity. By referencing the SSA regulation, the ALJ found, at minimum, that Duncan had functional ability to perform occasional lifting of no more than ten pounds, sitting for up to six

10

hours and standing or walking no more than two hours. The ALJ pointed to specific evidence to support his determination of residual functional capacity for simple sedentary work, including Waxman's findings. Moreover, the ALJ noted properly that the clinical record revealed no ongoing mental health treatment and no disabling mental difficulties.

According to the defendant, the ALJ relied properly on the medical vocational guidelines because the record failed to demonstrate that Duncan's alleged non-exertional limitations were established or, assuming they existed, would affect the performance of unskilled sedentary work activities. The defendant contends that the ALJ assessed medical opinions properly. The SSA regulations cited by the plaintiff apply to medical source opinions, and the ALJ noted that no medical opinions from any source, treating or otherwise, placed limitations on Duncan that is inconsistent with the performance of sedentary work.

### Plaintiff's Reply

In reply, Duncan contends that the ALJ failed to consider the four factors required to be considered when determining the weight to give to the treating physician's opinion. According to Duncan, the ALJ failed to specify which of the symptoms alleged by Duncan he found to be in excess of what could reasonably be expected based on her medically determinable impairments, or discuss whether any of the medical evidence supported her symptoms. Duncan asserts that the ALJ did not explain adequately or determine the extent to which her non-exertional impairments would further diminish her capacity to perform sedentary work. Duncan contends that the defendant attempts to provide a post hoc rationale for the ALJ's decision to correct deficiencies in the ALJ's decision, which may not be accepted by a reviewing court.

### Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted). "It is not the function of a reviewing court to decide de novo whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The SSA regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless, the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly

limits [the claimant's] physical or mental ability to do basic work activities."   At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.   If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.   If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations omitted).

If a claimant's impairment(s) does not meet or equal a listed impairment following step three, the agency will assess and make a finding about the claimant's residual functional capacity "based on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R. §§ 404.1520(e), 416.920(e).  The residual functional capacity assessment is used at step four of the sequential evaluation process, to determine if the claimant can do past relevant work, and at step five, to determine if the claimant can adjust to other work.  See 20 C.F.R. §§ 404.1520(e), 146.920(e).  Concerning the residual functional capacity assessment, the Second Circuit Court of Appeals stated that

[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence.   Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed.

Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013).

"As a fact-finder, an ALJ is free to accept or reject [the claimant's] testimony," but "[a] finding that the witness is not credible must nevertheless be set forth with sufficient specificity

to permit intelligible plenary review of the record." Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988).   When evaluating symptoms, including pain, the SSA regulations provides that the ALJ consider the following factors: (1) the claimant's "daily activities"; (2) "location, duration, frequency, and intensity" of the claimant's pain or other symptoms; (3) "[p]recipitating and aggravating factors"; (4) "type, dosage, effectiveness, and side effects of any medication" the claimant may take or has taken to alleviate her pain or other symptoms; (5) "[t]reatment, other than medication" the claimant receives or has received for relief of her pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted).

> [E]ven when a treating physician's opinion is not given controlling weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive.   The ALJ must consider, *inter alia*, the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence . . . , particularly medical signs and laboratory findings, supporting the opinion, the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues. . . . After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.

> Id. at 129 (internal quotation marks, alterations and citations omitted).

"Although the claimant bears the general burden of proving that he is disabled under the statute, 'if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform.'" Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Ordinarily, the Commissioner's burden is met "by resorting to the applicable medical vocational guidelines." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (citation omitted). In considering work which exists in the national economy, the ALJ "will decide whether to use a vocational expert or other specialist." 20 C.F.R. §§ 404.1566(e); 416.966(e).

> [T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the [Commissioner] must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.

> Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986).

### *Application of Legal Standard*

#### Whether the ALJ Erred in Determining Credibility

Duncan's argument that the ALJ erred in assessing her credibility and failing to evaluate her subjective complaints of pain consists solely of her contention that the ALJ made his residual functional capacity finding prior to determining her credibility, because he stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The plaintiff makes citation to cases in this district in support of her

contention that remand is appropriate because "the ALJ committed legal error when he determined plaintiff's [residual functional capacity] prior to making a credibility determination." The following addresses the cases cited by Duncan.

In Agapito v. Colvin, the court remanded the case, finding that the ALJ did not evaluate properly the plaintiff's subjective complaints of pain, because the ALJ based "his credibility determination, in part, on Plaintiff's [residual functional capacity]." No. 12 Civ. 2108, 2014 WL 774689, at *3 (S.D.N.Y. Feb. 20, 2014). The court explained: "Although the ALJ did set forth additional reasoning to support this determination, . . . the ALJ is directed to describe these reasons with more 'specificity to permit intelligible plenary review.'" Id.

In Norman v. Astrue, the court remanded the case, finding that the ALJ used, improperly, his previous determination of the plaintiff's residual functional capacity "to discount plaintiff's non-conforming allegations and resulting limitations. What is missing from such an analysis is 'any explanation as to why [p]laintiff's subjective complaints were found less than fully credible.'" 912 F. Supp. 2d 33, 43 (S.D.N.Y. 2012). The court noted that "the ALJ did not consider additional factors required by 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi) before rejecting plaintiff's subjective testimony, nor did he explain his 'decision explicitly and with sufficient specificity that a reviewing court may be able to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" Id. at 43-44. The court also noted that "the ALJ did not properly question whether the '*plaintiff's statements* about the intensity, persistence, or functionally limiting effects' of his pain are consistent with the objective medical evidence. The recitation of medical evidence, without more, is not a stand-in for a 'meaningful analysis of how those factors detracted from [the plaintiff's] credibility.'" Id. at 44 (citation omitted).

16

In Seabrook v. Astrue, the court remanded the case, stating that the ALJ "came to a decision regarding Plaintiff's [residual functional capacity], and then used that decision to undermine Plaintiff's credibility." No. 11 Civ. 5642, 2013 WL 1340134, at *3 (S.D.N.Y. Mar. 26, 2013). The court noted:

> [T]he ALJ's sparse decision failed to comply with SSR 96-7p. This regulation describes the process and level of detail an ALJ must provide when rendering a decision on a claimant's credibility. The regulation specifies that '[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.' SSR 96-7p. The ALJ did not do this. The ALJ did not specify which aspects of Plaintiff's statements he disbelieved, merely providing the blanket statement that any alleged limiting effect was not credible to the extent it was inconsistent with the [residual functional capacity].

> Id.

Moreover, the court stated in a footnote:

> It is possible that the ALJ meant to say that he found Plaintiff's statements about his condition not to be credible to the extent they conflicted with the objective medical evidence, and what Plaintiff had previously told his doctors regarding his ability to perform daily tasks. Based on the substantial amount of consistent medical evidence in the record indicating that Plaintiff was generally able to take care of himself and that his corrected vision was no worse than 20/40, this credibility determination might make sense based on a consideration of all the evidence. But this is not what the ALJ said. On remand, the ALJ should make sure to make his credibility determination prior to coming to his conclusion on Plaintiff's [residual functional capacity].

> Id. at *3 n.2.

In Robles v. Astrue, the court, adopting the findings made in a magistrate judge's report and recommendation, remanded the case, finding that the "ALJ erred when he determined the Plaintiff's residual functional capacity . . . prior to determining the credibility of Plaintiff's testimony." No. 11 Civ. 5644, 2013 WL 1180417, at *2 (S.D.N.Y. March 19, 2013). The

17

magistrate judge's findings note additional problems related to the ALJ's approach to

determining credibility, including that his analysis of the subjective factors detracting from the

claimant's credibility was flawed.

> In Barnwell v. Colvin, the court remanded, determining that
>
> the ALJ's analysis of plaintiff's statements regarding her impairments consists entirely of the following: "The undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [residual functional capacity] assessment." . . . These statements are unaccompanied by any analysis of the factors relevant to assessing the credibility of the plaintiff's statements as required by the regulations, 20 C.F.R. § 416.929(c), or any specifics regarding how plaintiff's statements were inconsistent with the medical record. Such a perfunctory evaluation of plaintiff's credibility is insufficient.
>
> No. 13 Civ. 3683, 2014 WL 4678259, at *13 (S.D.N.Y. Sept. 19, 2014).

The court also analyzed the credibility determination standard, noting:

> In order to take proper account of the claimant's symptoms, the ALJ should first determine the extent to which the claimant's symptoms are credible in light of the objective record evidence, and then use that finding as one aspect of the [residual functional capacity] analysis. Determining the [residual functional capacity] first and then measuring the claimant's credibility by that yardstick reverses the standard in a way that is not only illogical, but also prejudicial to the claimant. The Commissioner argues that various decisions from this Circuit have held to the contrary and cites three cases in support of this contention . . . . But in each of those cases, the Court found no legal error notwithstanding the language that plaintiff's statements were not "credible to the extent they are inconsistent with the [residual functional capacity]" because the ALJ had engaged in detailed analysis that showed that plaintiff's statements were considered before the ALJ made [a residual functional capacity] determination.
> . . . . Where, as here, the ALJ has provided no analysis from which it can be determined whether the ALJ considered plaintiff's credibility before or after making [a residual functional capacity] determination, the ALJ has committed legal error.
>
> Id. at *14-15 (internal citations omitted).

No binding authority supports the proposition that the ALJ's statement that, "the claimant's statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," is a per se reversible error subject to remand, and none of the cases cited by Duncan suggests such a position.

Here, unlike in the cases cited by the plaintiff, the ALJ described, with sufficient specificity and in great detail, the reasons for his credibility finding.  In evaluating the intensity, persistence and limiting effects of the alleged symptoms, the ALJ first considered Duncan's allegations of inability to work due to depression and anxiety, the limitations in her ability to deal with stress, the interference of her irritability with her ability to deal with others, her complaints of knee and back pain and numbing sensations in her extremities and debilitating pain increase while walking, sitting and standing.  The ALJ concluded that the evidence failed to corroborate the degree of restrictions and pain she allegedly suffered in her back and legs because physical examinations, although revealing tenderness and some pain when moving her right knee and feet, showed no resulting deficits and no clinical findings existed in the record which limited Duncan's ability to sit, lift and carry "lighter objects."  The ALJ also explained that Waxman's findings revealed no persistent neurological deficits to the upper or lower extremities, persistent muscle spasm, muscle atrophy, or significant restriction in motion.  The ALJ then addressed evaluations and findings by "Dr. Beharrie," Dr. Kaplan and Dr. Kaznatcheeva.

Next, the ALJ considered Duncan's allegations of numbness in her hands and legs and that mental difficulties impeded her memory and daily functioning.  He concluded that physical examination failed to reveal any neurological abnormalities and explained that Duncan's ability

19

to perform rapidly alternating movements was intact, she remained stable in the Romberg's pose and she was able to perform heel, toe and tandem walking.  Moreover, the ALJ found no deficits in memory, explaining that Duncan was able to repeat names, comprehend and follow-up three-step commands, was alert and well-oriented and displayed appropriate affect.  The ALJ also considered Duncan's history of asthma and noted that the progress notes failed to document constant forgetfulness, migraine headaches and persistent fatigue.  The ALJ concluded that "a review of progress notes fails to reveal findings which are consistent with the extent of pain and limitation reported by the claimant."  After making this finding, the ALJ considered other medical evidence before concluding that Duncan's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity."

The ALJ's assessment of Duncan's credibility does not appear to rest there.  Subsequent to this statement, the ALJ continued evaluating Duncan's credibility, comparing her allegations of symptoms and pain against the medical records.  In fact, the ALJ made three more credibility determination statements subsequent to his allegedly erroneous determination of credibility, namely, he found that: (1) Duncan's "testimony was somewhat credible with regard to experiencing some neck and upper extremity pain as a result of fibromyalgia, carpal tunnel syndrome and a cervical condition; however, such testimony is not consistent with allegations of total disability"; (2) "[i]n evaluating the claimant's credibility under the factors described in 20 CFR §§ 404.1529(c)(3), 416.929(c)(3) and Social Security Ruling 96-7p, there are several reasons why the claimant's allegations of debilitating symptoms are not wholly credible"; and (3) Duncan's "subjective allegations of disabling symptoms [are] not credible to the extent that

they would prevent her from performing a range of sedentary work."

The Court does not condone the statement used by the ALJ that "the claimant's statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," because evaluating Duncan's credibility based on the previously made findings concerning her residual functional capacity, without more, constitutes legal error. The Court urges the defendant to refrain from using the erroneous statement, used by the ALJ in this and many other cases, that the claimant's credibility allegations are undermined "to the extent that they are inconsistent with the above residual functional capacity assessment."

However, in the circumstance of this case, the record demonstrates that the ALJ made credibility findings based on medical and non-medical records, as well as his observation of Duncan at the hearing. The ALJ provided a detailed explanation of his credibility finding and the reasons for that finding, both before and after the erroneous statement that "the claimant's statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Given that the most important factor in reviewing the claim of error in the ALJ's credibility finding is whether reasons for his credibility findings are set forth with sufficient specificity to permit meaningful review, see Williams, 859 F.2d at 260-61, and the Court's finding that the ALJ in this circumstance provided, with sufficient specificity, an explanation for his credibility finding, the Court concludes that the ALJ committed no error warranting reversal or remand in connection with his credibility finding.

<u>Whether Residual Functional Capacity Is Supported by Substantial Evidence</u>

Although the ALJ did not perform an explicit function-by-function analysis, the ALJ

applied the proper legal standard in analyzing Duncan's residual functional capacity, and his findings are supported by substantial evidence in the record such that additional analysis would be unnecessary.  The ALJ analyzed all the conditions alleged to be disabling, referencing and assessing medical evidence, in great detail, to support his determination that Duncan had residual functional capacity to perform simple sedentary work.  Waxman and Dr. Kaplan observed that Duncan had no difficulty walking, and medical records demonstrate that Duncan's upper extremity functioning was not impaired.  Moreover, the record does not support Duncan's claims of disabling mental limitations.  The ALJ explained and relied on medical opinions of consulting sources, Dr. Philip and Dr. Helprin, in his assessment of Duncan's physical and mental ability to handle the demands of sedentary work.  While Duncan contends that medical evidence shows she suffers from bilateral carpal tunnel syndrome, substantial evidence exists in the record to support the finding that Duncan can engage in frequent fingering and handling, and Duncan admitted that, contrary to her allegations of total disability, she engaged in work involving those activities, during the alleged period of disability.  Thus, the Court finds that substantial evidence supports the ALJ's residual functional capacity assessment.

Whether the ALJ Failed To Follow the Treating Physician Rule

Duncan contends that the weight the ALJ assigned to medical opinions "is quite confusing," and the ALJ assigned "no weight to the treating physicians," and failed to consider the factors governing the assignment of weight to treating physicians' opinions.  However, Duncan did not identify any treating physician's opinion that the ALJ failed to consider and to which he failed to assign weight.  Moreover, Duncan does not identify and the record does not demonstrate any medical opinion inconsistent with the ALJ's findings.  The Court finds that the ALJ explained, properly, the weight he assigned to medical opinions, after detailed analysis and

consideration of various factors in making his weight determinations.  Accordingly, granting relief on this ground is not warranted.

<u>Whether the ALJ Erred in Relying on the Medical Vocational Guidelines</u>

The ALJ found that Duncan's alleged non-exertional limitations are not supported or are contradicted by evidence in the record.  While the ALJ noted Duncan's minor limitations due to a mental condition, the record did not suggest she was incapable of performing the basic mental demands of unskilled work, including the ability to understand, carry out and remember simple instructions and deal with changes at work.   Duncan's contention, that the ALJ was precluded from relying on the medical vocational rules and he was required to use a vocational expert, is without merit.  The use of a vocational expert by the ALJ is discretionary.  <u>See</u> 20 C.F.R. §§ 404.1566(e); 416.966(e).  Although the SSA regulations permit the use of a vocational expert or other specialist, "[i]f the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue," 20 C.F.R. §§ 404.1566(e); 416.966(e), the ALJ did not find that was the case here, since he determined that the additional limitations do not significantly diminish Duncan's ability to work, such that she is unable to perform the full range of employment indicated by the medical vocational guidelines.  Thus, the Court finds that the ALJ did not commit an error, and he did not abuse his discretion when he failed to use a vocational expert.

<u>Whether Substantial Evidence Supports the ALJ's Decision</u>

The ALJ provided a detailed assessment of the medical and non-medical evidence.  The ALJ's findings, at each of the five steps of the sequential analysis, are based on substantial

evidence. Upon review of the record, the Court finds that substantial evidence supports the ALJ's decision.

## RECOMMENDATION

For the foregoing reasons, I recommend that: (1) the plaintiff's motion for judgment on the pleadings, Docket Entry No. 15, be denied; and (2) the defendant's motion for judgment on the pleadings, Docket Entry No. 19, be granted.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres, 500 Pearl Street, Room 2210, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Torres. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
       February 2, 2015

Respectfully submitted,

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

24